**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| | * | |
| **ROD & REEL, INC.,** *et al.* | * | |
| *Plaintiffs,* | * | |
| | * | Case No.: 8:20-cv-03388-PWG |
| **v.** | * | |
| **STATE AUTOMOBILE MUTUAL** | * | |
| **INSURANCE COMPANY,** | * | |
| *Defendant.* | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION AND ORDER

Pending before me is Defendant State Automobile Insurance Company's ("State Auto") Motion to Dismiss this action in its entirety because, it contends, the Plaintiffs' claims are barred by the doctrines of res judicata and collateral estoppel. This Motion has been fully briefed at ECF Nos. 23, 24, and 25, and I find that no hearing is necessary. *See* Local Rule 105.6. For the reasons outlined in this Memorandum Opinion, the Defendant's Motion to Dismiss is DENIED.

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs, Rod & Reel, Inc.; Chesapeake Beach Resort and Spa; Chesapeake Beach Hotel and Spa; Smokey Joe's Grill and Boardwalk Café; and Chesapeake Amusement, Inc. (collectively, "Rod & Reel") operate a variety of business ventures located at 4160 Mears Avenue in Chesapeake Beach, Maryland. ECF 22, Amend. Compl. at ¶ 17. Those businesses include a hotel, restaurant, tackle shop, furniture storage facility, and pull-tab bingo hall. *Id.* Rod & Reel purchased a Commercial Property and Business Policy from State Auto for the policy period from

April 1, 2014 to April 1, 2015 ("the Policy," ECF 22-3). The Policy included a Business Interruption and Extra Expenses coverage part. *Id.*

On February 8, 2015, a fire at Smokey Joe's Grill and Boardwalk Café, a restaurant located on Rod & Reel's insured property, caused Rod & Reel to sustain property damage, a loss of business income, and to incur extra expenses. Amend. Compl. ¶ 34. Rod & Reel submitted separate claims to State Auto for the property damage and for the business interruption and extra expenses ("Business Interruption Claim"). *Id.* ¶ 35. State Auto accepted and paid the claim for property damage. *Id.* ¶ 36. State Auto acknowledged coverage for Rod & Reel's Business Interruption Claim, but the parties disagreed regarding the amount State Auto owed under the Policy. *Id.* ¶ 37. Among the areas of disagreement was the length of the "period of restoration," which the Policy defines as follows:

'Period of Restoration' means the period of time that:

a**.** Begins immediately after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

b. Ends on the earlier of:
(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
(2) The date when business is resumed at a new permanent location.

'Period of restoration' does not include any increased period required due to the enforcement of any ordinance or law that:
(1) Regulates the construction, use or repair, or requires the tearing down of any property; or
(2) Requires any insured or others to test for, monitor, clean up, *remove,* contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of 'pollutants'.

The expiration date of this policy will not cut short the "period of restoration".

Policy at 89, as amended by Endorsement CP 15 56 02 97 at 91.

After trying and failing to reach an agreement with State Auto on the Business Interruption

Claim, Rod & Reel invoked the Policy's appraisal provision, which states:

> If [State Auto] and [Rod & Reel] disagree . . . on the amount of loss, either may
> make a written demand for an appraisal of the loss. In this event, each party will
> select a competent and impartial appraiser. The two appraisers will select an
> umpire. . . . The appraisers will state separately . . . the amount of loss. If they fail
> to agree, they will submit their differences to the umpire. A decision agreed to by
> any two will be binding. . . . If there is an appraisal, [State Auto] will still retain
> [its] right to deny the claim.

*Id.* at 85; Amend. Compl. ¶¶ 40–70.

Consistent with the Policy's terms, Rod & Reel and State Auto each selected an appraiser,

and the appraisers chose an umpire. Amend. Comp. at ¶¶ 70–74. Significantly, although neither

party asked their appraiser to determine the period of restoration, the final appraisal award signed

by both appraisers and the umpire included an award of $671,639 for the period for February 2015

through April 2016. *Id.* ¶ 81; ECF 22-11, Appraisal Award. In other words, the Appraisal Award

determined a period of restoration of 15 months. The Appraisal Award also included a month-by-

month breakdown of the money owed to Rod & Reel under the Policy.

State Auto rejected the total amount awarded in the Appraisal Award because, it argued,

the Appraisal Award improperly and incorrectly determined a period of restoration of 15 months,

and used that 15 month period as the basis for determining its total award. Amend. Compl. ¶ 92.

Instead, State Auto paid Rod & Reel $436,364 based on the Appraisal Award's month-by-month

loss calculation, but for a 12 month period only. MTD at 2. State Auto then filed a Petition to

Vacate or Modify the Appraisal Award in this Court, Case No. 8:18-cv-00340-PWG

("Modification Action").

In the Modification Action, State Auto argued that "all parties agreed that determining the

period of restoration was not a subject of the appraisal," and further alleged that the "purpose of

including the month-by-month breakdown was to allow a determination of the loss of business income to be made once the parties resolved the disputed period of restoration." Modification Action, ECF 1 at ¶¶ 18; 22. Because the Appraisal Award was "not consistent with the agreed-upon scope of the appraisal," State Auto asked this Court to modify the award to reflect that the reference to the 15 month restoration period, and the determination of a total amount owed based on that period, was improper. *Id.* ¶¶ 29–39. State Auto did not dispute the Appraisal Award's month-by-month calculation. *Id.* Rod & Reel moved for summary judgment, asking the Court to enforce the Appraisal Award as written, and to award Rod & Reel attorneys' fees because it contended that State Auto had acted in bad faith by filing the Modification Action. Modification Action at ECF 24. I denied Rod & Reel's Motion and granted State Auto's Petition in part, concluding that the Appraisal Award could not be enforced as drafted due to its inclusion of a period of restoration, "which was outside the scope of the referral." Modification Action, ECF 30, Mem. Op. at 2. Because I concluded that State Auto's Petition was meritorious, I denied Rod & Reel's request for attorneys' fees. *Id.* at 18. The Fourth Circuit affirmed that decision on August 12, 2019. Modification Action at ECF 36.

On January 27, 2020, Rod & Reel filed a Complaint with the Maryland Insurance Administration ("MIA") pursuant to Maryland Code § 27-1001 of the Insurance Article, alleging that State Auto did not act in good faith in the adjustment of its claim and seeking a determination of the amount State Auto still owed Rod & Reel for the Business Interruption Claim. MIA Complaint, ECF 23-2. The MIA concluded that Rod & Reel "met their burden to show by a preponderance of the evidence that [State Auto] is obligated to pay [Rod & Reel's] first-party commercial fire loss claim; however, [Rod & Reel] ha[s] . . . failed to demonstrate that: (1) [State Auto] owes an additional payment[] for the claim and (2) [State Auto] did not act in good faith in

4

the handling of this claim." MIA Decision, ECF 23-4 at 3. Rod & Reel did not request a hearing

on the MIA's decision or appeal the MIA decision to the Maryland Circuit Court when it became

final. MTD at 2.

Rod & Reel filed its complaint in this action in the Circuit Court for Calvert County on or

around September 22, 2020. ECF 1, Notice of Removal ¶ 1. State Auto removed the action to this

Court on November 20, 2020. *Id.*

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) provides that a complaint must be dismissed if it "fails to state a

claim upon which relief can be granted." The purpose of the rule is to test the sufficiency of the

complaint, not to address its merits. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir.

2006). To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "a short

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The claim for relief must be plausible,

and "threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Iqbal*, 556 U.S. at 678–79.

When reviewing a motion to dismiss, the Court must accept the well pleaded facts in the

operative complaint, and also may "consider documents attached to the complaint, as well as

documents attached to the motion to dismiss, if they are integral to the complaint and their

authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL

1308582, at *2 (D. Md. Mar. 28, 2013) (citing *Philips v. Pitt County Memorial Hosp.*, 572 F.3d

176, 180 (4th Cir. 2009)). And where the allegations of the complaint conflict with an attached

written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936

F.2d 1462, 1465 (4th Cir. 1991). If the Court considers matters outside the pleadings, it must treat

the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d). However, a court may take judicial notice of matters of public record without converting a motion to dismiss into motion for summary judgment. *Secretary of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)).

## DISCUSSION

State Auto moves to dismiss this action in its entirety on the theory that Rod & Reel's claims against it "are barred by the doctrines of *res judicata* and collateral estoppel" because the issues Rod & Reel presents in this case "were fully litigated and decided before this Court, the Fourth Circuit, and the MIA." MTD at 8.

*Res judicata* bars a subsequent action when: (1) the parties in the two actions are identical; "(2) the claim in the second matter is based upon the same cause of action involved in the earlier proceeding;" and (3) there is a valid final judgment on the merits in the prior action." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008). *Res judicata* prohibits a party from relitigating a claim that was already decided, as well as a claim that "could have been decided in an original suit."[1] *Id.*

The related doctrine of collateral estoppel "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Lucero v. Early*, No. CV GLR-13-1036, 2018 WL 4333745, at *3 (D. Md. Sept. 11, 2018) (quoting *E. Associated Coal Co. v. Dir., Office of Workers' Comp. Programs*, 578 F.App'x 165, 173 (4th Cir. 2014)). "A party invoking collateral estoppel must establish that: (1) the issue sought to be precluded is identical to one

---

[1]    Because the Modification Action was filed and decided in this Court, the preclusive effect of the judgment in that action is determined by federal law. *Anne Arundel Cty. Bd. of Educ. v. Norville*, 887 A.2d 1029, 1037–38 (Md. 2005).

6

previously litigated; (2) the issue was actually determined in the prior proceeding; (3) the issue's determination was a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment is final and valid; and (5) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum." *Id.*

## I. State Auto's Petition to Modify or Vacate the Appraisal Award does not bar Rod & Reel's present claims.

State Auto argues first that Rod & Reel's claims are barred because Rod & Reel's Motion for Summary Judgment in the Modification Action requested confirmation of the Appraisal Award and sought attorneys' fees pursuant to Maryland Code, § 27-1001 of the Insurance Article ("Insurance Article"), and Maryland Code, § 3-1701 of the Courts and Judicial Proceedings Article ("CJP") because, they claimed, State Auto had acted in bad faith. MTD at 9–10. State Auto argues that because "this case involves the same parties, subject matter, and issues as this Court's prior decision, re-litigation of these issues is barred by the doctrines of collateral estoppel and *res judicata.*" *Id.* I disagree.

The preclusive effect of the Modification Action turns on the breadth of what the parties alleged and what I decided therein. The scope of the Modification Action was narrow. State Auto sought a finding that the Appraisal Award improperly determined the period of restoration for Rod & Reel's Business Interruption Claim because that issue was undisputedly beyond the scope of the appraisal referral. *See* Modification Action, ECF 1, Complaint. In its Motion for Summary Judgment, Rod & Reel argued that the Appraisal Award should be confirmed as written or, alternatively, modified to eliminate reference to the period of restoration without altering the total amount owed. Rod & Reel did not seek a determination of the appropriate period of restoration, and it did not seek any relief related to State Auto's claims handling practices as it does in this case. The question is whether Rod & Reel's failure to assert its present claims as counterclaims in

the Modification Action prohibits Rod & Reel from proceeding with those claims now. Simply put, if the claims Rod & Reel asserts in this action "would have been considered compulsory counterclaims in the first action," then those claims are barred. *Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 219 (4th Cir. 2006).

Fed. R. Civ. P. 13(a) provides that "a pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[.]"

In this Circuit, "four inquiries are relevant in considering whether a counterclaim is compulsory." *Smoak*, 441 F.3d at 219. They are: "(1) whether the issues of fact and law in the claim and counterclaim are essentially the same; (2) whether res judicata would bar a subsequent suit on the counterclaim absent the compulsory counterclaim rule; (3) whether the same evidence would support or refute the claim and the counterclaim; and (4) whether there is a logical relationship between the claim and the counterclaim." *Id.* These four inquiries function "less like a litmus test and more like a guideline," and courts "need not answer all these questions in the affirmative for [a] counterclaim to be compulsory." *Id.* (quoting *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988)). Additionally, although evidentiary similarity is a significant part of the inquiry, "a counterclaim may still arise from the same transaction or occurrence as a logically related claim even though the evidence needed to prove the opposing claims may be quite different." *Painter*, 863 F.3d at 332 ("Where . . . the same evidence will support or refute both the claim and counterclaim, the counterclaim will almost always be compulsory. The 'same evidence' test thus accomplishes the purposes of Fed.R.Civ.P. 13(a), because the very purpose of making certain types of counterclaims compulsory is to prevent the relitigation of the same set of facts.")

Applying the four relevant inquiries to this case, I conclude that this action is not barred by Rod & Reel's failure to bring its present claims as counterclaims in the Modification Action.

With respect to the first inquiry, this action and the Modification Action do not address "essentially the same issues of law and fact." *Smoak*, 441 F.3d at 219 ("(1) whether the issues of fact and law in the claim and counterclaim are essentially the same[.]"). As explained above, the Modification Action was limited in scope. The only facts before me in that case were those pertaining to the appraisal process and resulting award, which I assessed under the narrow judicial review powers authorized by the Federal Arbitration Act. *See* 9 U.S.C. § 10. I concluded only that the Appraisal Panel had exceeded its authority by establishing a period of restoration, and modified the Appraisal Award to eliminate reference to that period. Mem. Op. at 16–19. I was not asked in the Modification Action, as I am now, to determine the appropriate period of restoration or total award owed to Rod & Reel under the Policy, and I was presented with no factual evidence that could have supported such a determination. *See generally* Modification Action; Amend. Compl. at 31–32.

Additionally, State Auto overstates the case when it argues in its Motion to Dismiss that Rod & Reel "already asserted a claim against State Auto for lack of good faith" and that this "issue was fully briefed by the Parties and ruled on by this Court." MTD at 11.

In the Modification Action, Rod & Reel included in its Motion for Summary Judgment a request for attorneys' fees due to State Auto's purported bad faith under Insurance Article § 27-1001 and CJP § 3-1701. Modification Action, MSJ at 29. Rod & Reel's request for fees was premised solely on the notion that State Auto initiated the Modification Action in bad faith. *Id.* at 24–27. I dispensed with that claim in a single sentence, concluding that "given that State Auto's request is meritorious, I will deny [Rod & Reel's] request for damages for lack of good faith on

9

the Plaintiff's part." Mem. Op. at 18. Rod & Reel did not raise any of the theories of bad faith that it asserts in this action, which include: "remov[ing] Scott Terra from the claim as part of a process to 'teach GGG a lesson'"; failing to provide Rod & Reel with the "notices required by Maryland law and regulations"; "fail[ing] to properly consider [Rod & Reel's] claim but at the same time informing [Rod & Reel] that it was considering the claim"; and refusing "to engage in the appraisal process to determine the period of restoration following the Court Order and instead [] simply reject[ing] [Rod & Reel's] proof of claim[.]" Amend. Compl. at ¶ 132–141. This action is the first I am hearing of any of those allegations, and it will be the first time that I assess whether State Auto acted in bad faith during the claims handling process. Accordingly, because "the issues of fact and law in the claim and counterclaim are [not] essentially the same," I answer the first inquiry in the negative. *Smoak*, 441 F.3d at 219.

With respect to the second inquiry, I conclude that the allegations in Rod & Reel's Amended Complaint would not be barred by *res judicata* absent the compulsory claim rule. *Id.* ("(2) whether res judicata would bar a subsequent suit on the counterclaim absent the compulsory counterclaim rule[.]"). Although the parties to the two actions are identical and there was a valid final judgment on the merits in the Modification Action, that judgment did not encompass any of the claims raised in this case. As State Auto itself observes in its Motion to Dismiss, "the doctrine of *res judicata* applies to the <u>cause of action</u>, not the underlying facts offered in support." MTD at 10 (emphasis in original). There was no cause of action asserted against State Auto in the Modification Action — its sole focus was the propriety of the Appraisal Award.

Furthermore, CJP § 3-1701 and Insurance Article § 27-1001 mandate that claims against an insurer for failing to act in good faith must be brought in the MIA before an insured may file such claims in the Maryland Circuit Court. This statutory requirement belies the argument that

Rod & Reel was required to bring its bad faith claim in the Modification Action when it had not yet filed in the MIA.[2]

Regarding the third inquiry, the same evidence that supported my decision in the Modification Action does not support or refute Rod & Reel's claims in this case. *Smoak*, 441 F.3d at 219 ("(3) whether the same evidence would support or refute the claim and the counterclaim[.]"). In the Modification Action, I reviewed the Appraisal Award, the Policy's appraisal provisions, and various correspondence between the Appraisal Panel and regarding the appraisal process. *See generally* Modification Action. That evidence does not support or refute Rod & Reel's present claims for breach of contract, or its claims that State Auto failed to act in good faith during the claims handling process.

*Finally*, I must assess whether there is a "logical relationship" between the claims in this action and in the Modification Action. *Smoak*, 441 F.3d at 219 ("(4) whether there is a logical relationship between the claim and the counterclaim."). The claims in the two actions are logically related in the sense that they involve the same parties and their dispute regarding the amount owed under the Policy for Rod & Reel's Business Interruption Claim. For the reasons identified earlier in this Opinion, however, the relationship between the Modification Action, which was concerned exclusively with the propriety of the Appraisal Award, and the present action, which is concerned with State Auto's conduct during the claims handling process and the amount (if any) still owed under the Policy, is fairly superficial. In any event, the relationship between the claims in the two actions is not sufficient to overcome the fact that the answers to the other three inquiries weigh in

---

[2]     State Auto argues that Rod & Reel in fact was *not* required to file in the MIA because the Business Interruption Claim falls under an exception to that statutory requirement. I address this point in Section II at page 15, below.

favor of finding that Rod & Reel's present claims were not compulsory counterclaims in the Modification Action.

For those reasons, I conclude that Rod & Reel's present claims against State Auto are not barred by the Modification Action under the doctrine of *res judicata* or under Fed. R. Civ. P. 13(a). And because the present action concerns an entirely different set of facts, they also are not collaterally estopped.

## II.   The decision of the Maryland Insurance Administration does not bar Rod & Reel's claims.

State Auto argues next that dismissal is appropriate in this case because Rod & Reel's claims have already been heard and rejected by the Maryland Insurance Administration. MTD at 11–15. Its argument is grounded primarily on the notion that "principles of issue preclusion are appropriately applied to fact-finding of administrative agencies acting in a judicial capacity." *Id.* at 11. Rod & Reel responds that this case "falls squarely within an exception to the general rules[3] regarding administrative agency decisions" and that the cases cited by State Auto[4] are therefore inapposite.

---

[3]   Maryland Courts have noted that "it is unclear under Maryland law to what extent principles of res judicata and collateral estoppel apply to administrative decisions." *See Sugarloaf Citizens Ass'n v. Northeast Md. Waste Disposal Auth.,* 323 Md. 641, 658–59 n. 13, 594 A.2d 1115 (1991); *Weatherly v. Great Coastal Exp. Co.*, 883 A.2d 924, 933 (Md. Ct. App. 2005); *Hyde v. Maryland State Bd. of Dental Examiners*, No. CV ELH-16-2489, 2018 WL 5786114, at *14 (D. Md. Nov. 5, 2018). The Maryland Court of Appeals has also stated, however, that "agency findings made in the course of proceedings that are judicial in nature should be given the same preclusive effect as findings made by a court." *Batson v. Shiflett*, 602 A.2d 1191, 1200 (1992).

[4]   For the general proposition that an administrative agency decision has preclusive effect on subsequent court proceedings, State Auto relies on a 1986 decision from the United States Supreme Court, *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986), which held that "when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding *the same preclusive effect to which it would be entitled in the State's courts*." (emphasis added). As explained below, Maryland law does not give preclusive effect to MIA decisions under the relevant statutes. *See Thompson v. State Farm Mut. Auto Ins. Co.*, 9 A.3d 112 (Md. Ct. App.

Maryland Code § 3-1701 of the Courts and Judicial Proceeding Article applies to actions against insurance providers that seek to "determine the coverage that exists under the insurer's [] policy," "to determine the extent to which the insured is entitled to receive payment from the insurer for a covered loss," and actions that allege "that an insurer failed to act in good faith."[5] Generally, an insured may not file an action pursuant to the statute "before the date of a final decision under § 27-1001 of the Insurance Article." *Id.* at § 3-1701(c).

Insurance Article § 27-1001 lays out the following preliminary administrative procedures that are prerequisite for actions filed under CJP § 3-1701:

> (d)(1) A complaint stating a cause of action under § 3-1701 of the Courts Article shall first be filed with the Administration.
> \*\*\*
> (e)(1)(i) Within 90 days after the date the filing was received by the Administration, the Administration shall issue a decision that determines:
>> 1. whether the insurer is obligated under the applicable policy to cover the underlying first-party claim;
>> 2. the amount the insured was entitled to receive from the insurer under the applicable policy on the underlying covered first-party claim;
>> 3. whether the insurer breached its obligation under the applicable policy to cover and pay the underlying covered first-party claim, as determined by the Administration;
>> 4. whether an insurer that breached its obligation failed to act in good faith; and
>> 5. the amount of damages, expenses, litigation costs, and interest, as applicable and as authorized under paragraph (2) of this subsection.
> \*\*\*
> (f)(1) If a party receives an adverse decision, the party shall have 30 days after the date of service of the Administration's decision to request a hearing.
> (2) All hearings requested under this section shall:

---

2010). Additionally, none of the Maryland cases State Auto cites involve the relevant statutes, and all but one predate their enactment. MTD at 11–12.

[5]      Good faith is defined under the relevant statutes as "an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim." Md. Code Courts and Judicial Proceedings Article § 3-1701(e); Insurance Article § 27-1001.

(i) be referred by the Commissioner to the Office of Administrative Hearings
for a final decision under Title 10, Subtitle 2 of the State Government
Article;

(ii) be heard de novo; and

(iii) result in a final decision that makes the determinations set forth in
subsection (e) of this section.

(3) If no administrative hearing is requested in accordance with paragraph (1) of
this subsection, the decision issued by the Administration shall become a
final decision.

(g)(1) If a party receives an adverse decision, the party may appeal a final decision
by the Administration or an administrative law judge under this section to a
circuit court in accordance with § 2-215 of this article and Title 10, Subtitle
2 of the State Government Article.

*** 

(3) Notwithstanding any other provision of law, an appeal to a circuit court under
this section shall be heard de novo.

Rod & Reel filed a complaint with the MIA in accordance with § 12-1001(d)(1) on January

28, 2020. MTD at Exh. 1. The MIA issued a decision within the 90 day window prescribed by the

statute, which concluded that Rod & Reel had "met their burden to show by a preponderance of

the evidence that [State Auto] is obligated to pay [Rod & Reel's] first-party commercial fire loss

claim." MIA Decision, ECF 23-4, at 1. It also concluded, though, that Rod & Reel "failed to

demonstrate that: (1) [State Auto] owes an additional payment[] for the claim and (2) [State Auto]

did not act in good faith in the handling of this claim." *Id.* Rod & Reel did not appeal the MIA

decision and it thereby became final. Rod & Reel then filed this action in the Circuit Court for

Calvert County as authorized by  § 3-1701 of the Courts and Judicial Proceedings Article.

Rod & Reel complied with the preliminary administrative procedure that is outlined in

Insurance Article § 12-1001. Because those procedures are statutorily prerequisite to filing an

action in the Maryland Circuit Court under CJP § 3-1701, to find that the MIA proceedings have

preclusive effect on the subsequent bad faith action in the Maryland Circuit Court would require

interpreting CJP 3-1701 to reach an absurd result—one that cannot be squared with the plain

language of the statute. Maryland case law supports that conclusion. In *Thompson v. State Farm*

14

*Mut. Auto Ins. Co.*, 9 A.3d 112 (Md. Ct. App. 2010), the Maryland Court of Special Appeals recognized that "the damage remedy/jury trial rights authorized by CJP § 3-1701 is independent from a true de novo review of the MIA administrative determination, **which is more appropriately characterized as a precondition to the civil suit**." (emphasis added). The *Thompson* Court went on to note that the MIA's "decision appears to be a nullity once appellant has filed [a] civil action under CJP § 3-1701." *Id.*[6] This Court has likewise concluded that the MIA decision under Insurance Article § 12-1001 does not bar a subsequent civil action under CJP § 3-1701. *See Unitrin Auto & Home Ins. Co. v. Karp*, 481 F. Supp. 3d 514, 525–26 (D. Md. 2020) ("The Court does need to address Unitrin's contention that PennyMac is barred by collateral estoppel from asserting its own affirmative claims against Unitrin. The MIA's disposition of PennyMac's complaint is not binding on this Court, and by law becomes a legal nullity upon the filing of a court action. Thus, collateral estoppel does not bar PennyMac's claims.") (citations omitted). My colleagues in this Court have also recognized that the two relevant statutes authorize a judicial proceeding that is independent of any proceedings before the MIA. *Jackson v. Standard Fire Ins. Co.*, No. CV TDC-17-1612, 2018 WL 348148, at *3 (D. Md. Jan. 9, 2018) ("[T]he Maryland legislature has expressed its intent that this exhaustion requirement constitute not merely an element of a claim, but a jurisdictional prerequisite to the presentation of such a claim in a

---

[6]    I note as well that the parties appear to dispute whether the record before the MIA may properly be before this Court under CJP § 3-1701. *See* MTD at 14; Opp. at 18–21; Reply at 4–6. Rod & Reel mischaracterizes *Thompson* as standing for the proposition that the MIA record cannot properly be considered in the subsequent § 3-1701 action. In fact, the Court in *Thompson* specifically noted that it took no position on that issue. 9 A.3d at 121 n. 23 ("Unlike the law governing workers' compensation claims . . . the 2007 good faith insurance legislation does not appear to accord weight to the MIA or ALJ decision in a subsequent judicial proceeding. **We express no view on whether, in the absence of such a provision, a MIA or an ALJ decision, or the record in such proceedings, would be admissible in court** under Md. Rule 5–803(b)(A)(iii).") (emphasis added).

Maryland court."); *Fakhoury v. Great N. Ins. Co.*, No. CIV. WDQ-12-0268, 2012 WL 1554487, at *3 (D. Md. Apr. 30, 2012) (citing *Thompson*, 9 A.3d at 119) ("Although the administrative process includes an option to appeal to state circuit court, § 27–1001(g)(1), the civil action authorized under § 3–1701 is independent, and should not be treated as an appeal of the administrative decision.").

State Auto argues finally that this action falls under an exception to the administrative prerequisites to filing an action in under CJP § 3-1701(c)(2)(iii), and that because Rod & Reel *voluntarily* submitted this matter to the MIA, its unappealed[7] decision is preclusive. MTD at 14; Reply at 7. Nonsense. State Auto cites no authority to support that argument, which I do not find persuasive. The controlling statutes state that actions arising under "a commercial insurance policy on a claim with respect to which the applicable limit of liability exceeds $1,000,000," are not subject to the general requirement that "a party may not file an action under [CJP § 3-1701] before the date of a final decision under § 27-1001 of the Insurance Article." The statutes' plain language exempts certain insureds from the general administrative exhaustion requirement—it does not state that claims falling under that exception (or any other) may not follow the procedures laid out therein, or that submitting such claims to the MIA will preclude a party receiving an adverse decision in the MIA from filing a claim in court under CJP § 3-1701.

Accordingly, I conclude that Rod & Reel's compliance with Insurance Article § 27-1001 does not bar Rod & Reel from pursuing the instant action under CJP § 3-1701.

---

[7]    *See Thompson*, 9 A.3d at 120, stating that an insured is "clearly" entitled under the statutes to choose "to go directly to court after a 'paper hearing'" rather than seeking a contested case hearing at OAH.

**CONCLUSION**

For the reasons outlined in this Memorandum Opinion, State Auto's Motion to Dismiss is DENIED.

**<u>ORDER</u>**

For the reasons stated in the foregoing Memorandum Opinion, it is this 24th day of February, 2022, by the United States District Court for the District of Maryland hereby ORDERED that Defendant State Auto Mutual Insurance Company's Motion to Dismiss Amended Complaint, ECF 23, is DENIED.  A scheduling order will follow, and the Court will schedule a Fed. R. Civ. P. scheduling conference with counsel to discuss further proceedings in this case.

_____/S/_____

Paul W. Grimm
United States District Judge
